Filed 7/1/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| LEONARD FADEEFF et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br>STATE FARM GENERAL<br>INSURANCE COMPANY,<br><br>    Defendant and Respondent. | A155691<br><br>(Mendocino County Super. Ct.<br> No. SCTMCVG1768908)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING |

BY THE COURT:

It is ordered that the opinion filed herein on May 22, 2020, be modified as follows:

In the last sentence on page 13, the words "the reasonableness of State Farm's coverage position" should be deleted and replaced with the word "it". The sentence will now read "The problem with this argument is that it was not the basis for the motion for summary judgment."

This modification does not change the judgment. The Petition for Rehearing is denied.

Dated:_____          _____

                                                                        Kline, P.J.

1

Filed 5/22/20; Certified for publication 6/8/20 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEONARD FADEEFF et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>STATE FARM GENERAL<br>INSURANCE COMPANY,<br><br>     Defendant and Respondent. | A155691<br><br>(Mendocino County Super. Ct.<br> No. SCTMCVG1768908) |

     Leonard and Patricia Fadeeff's home and personal property were damaged by the 2015 Valley Fire that swept across a wide swath of northern California. Their insurer, State Farm General Insurance Company (State Farm), paid for cleaning, repairs and some living expenses, but denied the Fadeeffs' supplemental demand for policy benefits for additional repairs and contents replacement. The Fadeeffs sued State Farm for breaching the implied covenant of good faith and fair dealing in their property policy, commonly known as insurance bad faith, and sought punitive damages. The trial court granted State Farm's motion for summary judgment. The Fadeeffs appeal, and we now reverse.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Fadeeffs' home in Hidden Valley Lake, California was insured under a State Farm homeowners' policy that covered building loss and personal property. In September 2015, the Valley Fire in Lake County caused smoke damage to the Fadeeffs' property, which they timely reported. Shortly thereafter State Farm was aware that the linen wall covering inside the home had started to buckle and that one of the Fadeeffs had asthma and other health concerns. With State Farm's approval, the Fadeeffs retained ServPro to assist with smoke and soot mitigation and cleaning. State Farm "call[ed] the shots" with respect to what ServPro could do in connection with the Fadeeffs' claim. ServPro power washed the exterior siding of the home to clean smoke, soot and ash.

State Farm inspected the Fadeeffs' property on October 3, 2015. The file notes from its independent adjuster Greg Gannaway state that the home was "well maintained with no apparent deferred maintenance" and that "[a]ll damage is related to smoke and soot." State Farm found smoke and soot on the interior walls, ceilings and carpeting, and on all exterior elevations including on the very large deck and handrail.

State Farm made a series of payments in October, November and December on the Fadeeffs' claim totaling about $50,000.[1]

The Fadeeffs hired a public adjuster and submitted supplemental claims for further dwelling repairs and additional contents replacement in January 2016, totaling approximately $75,000.

---

[1] The payments on the claim were allocated to Coverage A (Building) $17,444.72, Coverage B (Contents) $29,603.20, and Coverage C (Additional Living Expenses) $5,053.94, less the $2,038 deductible.

State Farm used a different independent adjuster (James Carpenter) to investigate the supplemental claims. Carpenter is not a licensed adjuster in California, nor is he licensed in any building trade. He inspected the Fadeeffs' property in March 2016 and stated he could not find smoke damage.

In connection with the supplemental claims, State Farm retained Forensic Analytical Consulting Services (FACS) to inspect the Fadeeffs' home and a company called HVACi to inspect the Fadeeffs' HVAC system.

State Farm has an internal "Operations Guide" for the use of third-party experts in handling first party claims. It requires that adjusters prepare a written referral letter to the third-party expert that "provide[s] clear and concise instructions, and list[s] the specific question(s) to be addressed by the independent expert." The Operations Guide includes a template letter for this purpose.[2] Carpenter was unaware of the Operations Guide regarding the use of third-party experts, and the retention letter issued by State Farm to FACS did not provide "[a list of] the specific questions to be addressed," as required by the Operations Guide. State Farm did not issue a referral letter at all when it retained HCAVi.

FACS took only surface samples from the Fadeeffs' home. David Brinkerhoff (the certified industrial hygienist for FACS), did not sample the backside of any materials, from wall cavities, behind outlets and light switch plates, or under floor coverings. According to Brinkerhoff, air samples were not within FACS's scope of work. FACS's report states that it "recommends cleaning and restoration" in cases of "distinct observable smoke odor" or

---

[2] The template is formatted as a letter, with blanks for the claim number and policy holder. It includes this language: "Specifically, we are seeking an objective expert opinion, including supporting information, relating to the following question(s):" "(insert one or more questions)" and then has three blank lines numbered 1, 2, 3.

"clearly visible debris, staining, or corrosion indicative of fire related smoke particle deposition." Brinkerhoff determined that no additional cleaning was required to address smoke or fire damage.

The FACS report noted other "sources of combustion" at the Fadeeffs' property, including an outdoor propane barbeque, a wood fireplace in the bedroom, a wood stove, and candles that had been burned in the living room. Brinkerhoff testified that he never asked the Fadeeffs when they had last used any of these sources of combustion.

The FACS and HVACi reports supported Carpenter's conclusion to deny those portions of the supplemental claims they addressed. State Farm sent a letter dated April 25, 2016, to the Fadeeffs' public adjuster denying *all* of the supplemental claims and included copies of the two reports.

Two specifics of State Farm's April 25, 2016 denial letter (signed by Carpenter) are particularly relevant to the issues before us:

State Farm denied the Fadeeffs' supplemental claim for repairs to the exterior paint and for the interior "wallpaper and . . . carpet" based on Carpenter's conclusion that the damage was due to wear, tear, and deterioration.

State Farm denied coverage for the rear deck because it concluded that this portion of the exterior "did not sustain accidental direct physical loss and therefore, there is no apparent smoke or fire (ember) damage." (This is apparently contrary to the initial inspection on October 3, stated above, describing smoke and soot on the very large deck.)

The Fadeeffs filed suit against State Farm for insurance bad faith and punitive damages. They also sued ServPro for negligence in its performance of emergency services, causing further damage to the Fadeeffs' property.

State Farm moved for summary judgment on the ground that the "genuine dispute" doctrine defeats the bad faith claim where an insurer reasonably relies upon an expert opinion in reaching a claim decision. State Farm's theory was that the retention of FACS and HVACi demonstrated its "good faith effort to investigate the claim," and without regard to whether the Fadeeffs contest those opinions, it is "undisputed that State Farm reasonably relied upon them in determining that no additional amounts were owed on the claim. At the very least, this is a classic 'genuine dispute' upon which plaintiffs cannot, as a matter of law, base a bad faith cause of action."

The Fadeeffs' written opposition to the motion included a request for a continuance to take discovery under Code of Civil Procedure section 437c, subdivision (h).[3] As to the merits, the Fadeeffs argued that there were multiple material disputes as to whether State Farm acted unreasonably in denying the Fadeeffs' supplemental claims. The Fadeeffs submitted the declaration of James Irmiter, a senior project manager for Forensic Building Science, Inc. (FBS) who they had retained to conduct a survey of fire debris damage to their home. FBS's preliminary report, included in the Fadeeffs' evidence, concluded that based on site inspection and soot sampling, the Fadeeffs' property was damaged by deposits of soot throughout the structure that had not yet been completely removed, and that removal of all wall and ceiling finishes, exposed wall and roof insulation, HVAC equipment, cavity insulation and conduit with any opening would be required for proper cleaning and remediation. The FBS preliminary report also contained a section entitled "[r]eview of FACS report," with comments on specific statements in the FAC report. The Fadeeffs also submitted a declaration of

---

[3] All statutory references are to the Code of Civil Procedure unless otherwise stated.

5

their independent public adjuster, David DeTinne, and a declaration of their trial counsel, Christopher Carling, addressing the continuance issue and authenticating certain documents.

At the hearing on the summary judgment motion, the trial court did not address the request for continuance. It sustained State Farm's objections to portions of the Irmiter declaration and to the entire attached FBS report on foundation and hearsay grounds, the effect of which was to gut the Fadeeffs' proffered evidence contradicting State Farm's expert FACS. The court then granted State Farm's motion for summary judgment, and later signed without modification the proposed order prepared by State Farm.

This appeal followed, raising two issues: whether the trial court erred in not granting appellants' request for continuance, and whether the trial court erred in granting the motion for summary judgment.

## DISCUSSION

### I.

For a defendant to prevail on a motion for summary judgment, it must show that at least one element of plaintiff's cause of action cannot be established, or the defendant has an affirmative defense. (§ 437c, subd. (o); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) We review de novo the trial court's grant of summary judgment. (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52.) We view the evidence in the light most favorable to the nonmoving party. (*Saelzer v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

In insurance policies, as in all contracts, the law implies a covenant of good faith and fair dealing, and an insurer's denial or delay in paying policy benefits can give rise to tort damages if the denial or delay was unreasonable.

6

(*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720, 723 (*Wilson*).)[4]
"As a close corollary of that principle, it has been said that 'an insurer
denying or delaying the payment of policy benefits due to the existence of a
genuine dispute with its insured as to the existence of coverage liability or
the amount of the insured's coverage claim is not liable in bad faith even
though it might be liable for breach of contract.' (*Chateau Chamberay
Homeowners Assn. v. Associated International Ins. Co.* (2001) 90 Cal.App.4th
335, 347 [(*Chateau Chamberay*)].) This 'genuine dispute' or 'genuine issue'
rule was originally invoked in cases involving disputes over policy
interpretation, but in recent years courts have applied it to factual disputes
as well. [Citations.]

"The genuine dispute rule does not relieve an insurer from its
obligation to thoroughly and fairly investigate, process and evaluate the
insured's claim. A *genuine* dispute exists only where the insurer's position is
maintained in good faith and on reasonable grounds." (*Wilson*, *supra*, 42
Cal.4th at p. 723.)

Ordinarily, reasonableness is a factual issue to be decided by a jury.
(See CACI No. 2331 [in insurance bad faith action, plaintiff must prove "that

---

[4] As the court explained in *Wilson*, "While an insurance company has
no obligation under the implied covenant of good faith and fair dealing to pay
every claim its insured makes, the insurer cannot deny the claim 'without
fully investigating the grounds for its denial.' . . . By the same token, denial of
a claim on a basis unfounded in the facts known to the insurer, or
contradicted by those facts, may be deemed unreasonable. 'A trier of fact
may find that an insurer acted unreasonably if the insurer ignores evidence
available to it which supports the claim. The insurer may not just focus on
those facts which justify denial of the claim.' [Citations.]" (*Wilson*, *supra*, 42
Cal.4th at pp. 720-721.)

the [insurer] unreasonably [failed to pay/delayed payment of] policy benefits"].)

Our Supreme Court in *Wilson* explained how the " 'genuine dispute' " rule (sometimes known as the " 'genuine issue' " rule or doctrine) works with the standards for determining motions for summary judgment. The short answer is that it does not change the rules. (*Wilson*, *supra*, 42 Cal.4th at p. 724.) " 'The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.] . . . On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.' [Citation.] Thus, an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues (. . . § 437c, subd. (c)) as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." (*Ibid*.)

As Justice Croskey wrote in *Chateau Chamberay*, whether the genuine dispute doctrine can be applied in cases involving "purely a factual dispute" between an insurer and its insured can only be decided on a case-by-case basis. (*Chateau Chamberay*, *supra*, 90 Cal.App.4th at p. 348.) "[W]here an insurer, for example, is relying on the advice and opinions of independent experts, then a basis *may* exist for invoking the doctrine and summarily adjudicating a bad faith claim in the insurer's favor. (*Fraley v. Allstate Ins. Co*. [(2000)] 81 Cal.App.4th [1282,] 1293; *Guebara v. Allstate Ins. Co*. [(9th

8

Cir. 2001)] 237 F.3d [987,] 994.)  We concur, however, with the caveat advanced by the *Guebara* court.  It cautioned that an expert's testimony will not *automatically* insulate an insurer from a bad faith claim based on a biased investigation.  It suggested several circumstances where a biased investigation claim *should* go to jury: (1) the insurer was guilty of misrepresenting the nature of the investigatory proceedings . . .; (2) the insurer's employee's lied during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation. [Citation.]"  (*Chateau Chamberay*, *supra*, at pp. 348-349.)

Justice Croskey cautioned that this list is "certainly not intended to be exhaustive" of the circumstances that might justify submitting the existence of whether there was a " 'genuine dispute' " to a jury.  "Nor, we must also add, may an insurer insulate itself from liability for bad faith conduct by the simple expedient of hiring an expert for the purpose of manufacturing a 'genuine dispute.' " (*Chateau Chamberay*, *supra*, 90 Cal.App.4th at p. 349, fn. 8.)

Put another way, the "dispute . . . must be *genuine*.  An insurer cannot claim the benefit of the genuine dispute doctrine based on an investigation or evaluation of the insured's claim that is not full, fair and thorough."  (*Bosetti v. United States Life Ins. Co*. (2009) 175 Cal.App.4th 1208, 1237.)

## II.

The Fadeeffs requested continuance of the summary judgment hearing[5] on the ground that since State Farm's motion was based on the retention of

---

[5]  Section 437c subdivision (h) provides in pertinent part that if it appears from "affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a

experts as demonstrating its reasonableness as a matter of law, they needed discovery as to whether those firms were biased, truly independent, or otherwise interested in the outcome.

The request was supported by the declaration of trial counsel Christopher Carling, identifying and attaching copies of then-outstanding discovery requests, and describing the status of the responses (or non-responses).

State Farm opposed the request for continuance. It argued that the Fadeeffs had already taken discovery of the State Farm claims handlers and Brinkerhoff, who had written the FACS report, and that the outstanding discovery was untimely, went beyond the scope of the claim and would not provide admissible evidence.

A leading practical treatise summarizes section 437c, subdivision (h) this way: "[A] continuance (normally a matter within the court's discretion) is *'virtually mandated'* where the nonmoving party makes the requisite showing. The party need not show that essential evidence *does* exist, but only that it *may exist.* [*Dee v. Vintage Petroleum Inc.* (2003) 106 Cal.App.4th 30, 34 (emphasis added; internal quotes omitted); *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 634.]" (Weil et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2019) ¶ 10.207, p. 10-87.)

We review a trial court's decision on a continuance under the abuse of discretion standard. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100.)

Having made the written request for continuance, the Fadeeffs' trial counsel did not bring up the issue at the hearing on the motion for summary judgment. The trial court did not rule on the motion for continuance either at

---

continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just."

the hearing or in its written order. The court simply did not exercise its discretion to determine whether a continuance was warranted and on what terms. A trial court's failure to exercise discretion is itself an abuse of discretion. (*Kim v. Euromotors West/The Auto Galley* (2007) 149 Cal.App.4th 170, 176.) The Fadeeffs urge us to remand for the trial court to exercise its discretion. But we need not do that here, because as we will explain below, State Farm did not demonstrate that the insurance bad faith claim failed as a matter of law.

## III.

## A.

On appeal, the Fadeeffs argue that there were several separate aspects to their supplemental claims, as enumerated in the April 25, 2016 denial letter written by State Farm adjuster Carpenter. Some supplemental claims were related to the exterior of the home, some related to the interior, others related to contents. Some of those claims, the Fadeeffs argue, were denied by State Farm without reliance on any expert and are simply the conclusions of the adjuster, Carpenter; the Fadeeffs argue that as to these claims, State Farm did not establish a good faith dispute as a matter of law that would defeat their bad faith claim.

One example, amplified by the Fadeeffs in their briefing, is itself sufficient to deny summary judgment. The Fadeeffs made a supplemental claim for damage to the exterior of their home. As we have noted, ServPro power washed the exterior siding of the home to clean smoke, soot and ash. Patricia Fadeeff testified that after the power washing, paint was chipped all over the house, and that none of the paint had been chipped before the fire. Accordingly, the Fadeeffs argued that the power washing caused damage, and damage consequential to the repairs should have been covered as

11

required by state claims handling regulations.[6] But in the April 25, 2016 denial letter, State Farm denied the claim on the ground that it was due to wear and tear. ("The exterior paint is peeling and is chipped and this is not smoke or fire (ember) damage. Peeling and chipped paint is representative of wear, tear and deterioration of the painted exterior surface of the home.")

In making its motion for summary judgment, State Farm did not contend that its conclusion about wear and tear damage to the exterior of the home was based on the finding of its expert. State Farm did not dispute that it "denied coverage for the exterior paint based on its unlicensed adjuster, Mr. Carpenter's conclusion that the damage was due to wear, tear and deterioration."

To begin, State Farm's reliance on Carpenter undermines its argument that it reasonably relied on experts in denying the Fadeeffs' claim. Furthermore, recall that the record shows that different State Farm independent adjuster (Greg Gannaway) had inspected the Fadeeffs' home on October 3, 2015, and found the home was "well maintained with no deferred maintenance. All damage [was] related to smoke and soot." Yet in the April 25, 2016 supplemental claims denial letter, adjuster Carpenter concluded that the exterior damage was due to wear and tear. The Fadeeffs contend from this evidence that State Farm denied a supplemental claim based on the unsupported (and contradicted) conclusions of its second adjuster that the damage was preexisting. Was there preexisting wear and tear or was there damage to a well-maintained home by power washing after a wildfire? To

---

[6] Appellants cite California Code of Regulations, title 10, section 2695.9(a)(1) ("consequential physical damage incurred in making the repair or replacement not otherwise excluded by the policy will be included in the loss").

12

ask the question shows that State Farm has not established that it is "undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable." (*Wilson, supra,* 42 Cal.4th at p. 724.)

State Farm counters by citing the declaration of Brinkerhoff (the industrial hygienist for FACS) that he visually inspected the interior and exterior of the home, and collected samples from various areas on the interior and exterior, that he prepared a report with photographs of the structure and contents, and that the April 25, 2016 claim denial letter to the Fadeeffs' public adjuster states it was "[b]ased upon the results of our discussions, site inspections, received reports and investigation."

But even assuming all of this is true, State Farm's argument is unavailing because nothing in the FACS report or Brinkerhoff's declaration refers to peeling or chipped exterior paint or wear, tear or deterioration.

State Farm also argues that the apparent contradiction between the two independent adjusters retained by State Farm about the condition of the exterior is insufficient to create a dispute as to the reasonableness of State Farm's actions because Gannaway's notes in the State Farm claim file from October 3, 2015, are inadmissible hearsay. We may, and do, decline to consider this argument because it is raised only in a footnote. (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) In any event, Gannaway's notes bear the earmarks of a business record. (Evid. Code, § 1271.)

Finally, State Farm argues that even if the Fadeeffs are correct that ServPro caused damage, this damage would be excluded from the Fadeeffs State Farm coverage, and therefore its denial of additional benefits for this claim is indisputably reasonable. The problem with this argument is that the reasonableness of State Farm's coverage position was not the basis for the

13

motion for summary judgment. At trial, of course, State Farm will be free to argue this position.

Briefly, we conclude there are other disputed facts that make summary judgment inappropriate on similar grounds. As another example, State Farm denied coverage for the "wallpaper and . . . carpet" aspect of the supplemental claim based on adjuster Carpenter's conclusion that the damage was due to wear, tear and deterioration. In its motion for summary judgment, State Farm did not contend that its conclusion about wear and tear damage to the wall covering was based on the finding of its expert per se. Although Carpenter had no special expert qualifications to make a judgment about wear and tear of the linen wall covering, State Farm does not dispute that it denied coverage for the wall covering based on the conclusion of its unlicensed adjuster that the damage was due to wear, tear and deterioration.[7] Plus, it is undisputed that on September 23, 2015, State Farm was aware (according to its claim file) that the Fadeeffs' home had suffered smoke damage and that the linen wall covering in the home had started to "buckle up."

Also, Carpenter's conclusion about the condition of the wallpaper and paint in the April 25, 2016 denial letter was inconsistent with Gannaway's inspection six months earlier that the home was well maintained. In sum, viewing the evidence in the light most favorable to the non-moving party, we cannot conclude that it is undisputed or indisputable that the basis for State Farm's denial of the supplemental claims was reasonable.

---

[7] The logic was somewhat circular. Carpenter testified at his deposition that he made the determination about the wallpaper and carpet being damaged due to wear, tear and deterioration "based on there was no smoke, soot, or ash noted in the FACS report."

B.

The Fadeeffs also contend that there are triable issues regarding whether State Farm could have reasonably relied on its experts in denying the supplemental claims.  We agree.

We independently determine the facts as a matter of law, and we strictly construe the moving party's papers.  (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502.)  As we read them, State Farm's moving papers focus on its retention of and reasonable reliance on experts to establish there was a "genuine dispute" regarding payment of the supplemental claims.  Under the heading "Genuine Dispute Doctrine Negates Claim of Bad Faith," State Farm emphasizes that "[r]egardless of whether plaintiffs now contest those experts' opinions, it is undisputed that State Farm reasonably relied upon them in determining that no additional amounts were owed on the claim.  At the very least, this is a classic 'genuine dispute' upon which plaintiffs cannot as a matter of law, base a bad faith cause of action."

As we have noted, adjuster Carpenter retained FACS as a third-party expert.  But he was unaware of State Farm's operational guide regarding the use of third party experts, and issued a retention letter to FACS that does not (contrary to the guide) "provide[] clear and concise instructions and list the specific questions to be addressed."  It says nothing at all about the assignment.

By way of an example, the Fadeeffs' supplemental claim for personal property loss was presented as an inventory with dozens of items on a spreadsheet.  Carpenter could not remember having reviewed it, nor could Carpenter state any steps he took to analyze whether State Farm would provide coverage for these items.  Carpenter also testified that he never

15

asked FACS to investigate or inspect any items on the Fadeeffs' personal property spreadsheet of damaged items.  Carpenter admitted he took no steps to determine whether the conclusions in the FACS report were reliable or accurate.  But State Farm did not dispute that it denied the Fadeeffs' additional personal property claim by relying on the FACS report.

Appellants argue that from this set of circumstances, a jury could conclude that FACS was not retained to offer an unbiased report, but instead was retained to "rubber stamp" the decision to pay the Fadeeffs no additional benefits.

And the appellants point to other evidence from which a jury might infer that FACS's investigation could not reasonably be relied on because of its limited scope.  FACS recommends cleaning and restoration in cases of distinct observable smoke odor or clearly visible debris.  But FACS's samples were limited to surface samples; as noted above, Brinkerhoff conceded he did not sample the backside of any materials, from wall cavities, behind outlets, light switch plates, or under floor coverings.

In these circumstances, we cannot conclude that it is undisputed or indisputable that the denial of supplemental claims was reasonable based on a genuine dispute created by the retention of experts.[8]

IV.

State Farm moved for summary adjudication on the punitive damages claim, based on the identical asserted undisputed facts upon which it sought summary judgment on the insurance bad faith claim.  Having found that

---

[8]  Because we conclude that the trial court erred in granting summary judgment for the reasons stated above, we need not address appellants' arguments about whether the trial court erred in sustaining several evidentiary objections to appellants' evidence.

16

there was no triable issue of fact as to the sole cause of action, the trial court also concluded that appellants had failed to show a triable issue of fact "as to the request for punitive damages." This was the only conclusion it could have reached, because without an underlying cause of action there can be no damages. Having concluded that summary adjudication of the bad faith claim in State Farm's favor was error, we now consider appellants' argument that the trial court erred in summarily adjudicating the punitive damage claim in State Farm's favor.

State Farm argued in its motion for summary adjudication on punitive damages that appellants could not meet their burden of showing that State Farm's conduct constituted malice, oppression or fraud by clear and convincing evidence because the undisputed facts showed that State Farm dealt fairly and reasonably with the Fadeeffs. State Farm contended that it investigated, paid the Fadeeffs certain amounts on their claim, and then, when the supplemental claims were made, hired and reasonably relied on experts before denying the supplemental claims in the April 25, 2016 denial letter. State Farm argued that the Fadeeffs themselves had never seen the building or content estimates submitted by their public adjuster on their behalf and had not reviewed the expert reports (FACS and HVACi) before filing the lawsuit.[9] State Farm also asserted that when the Fadeeffs were asked questions at their depositions about what it characterizes as the "factual basis for their punitive damages request," the Fadeeffs "could not

_____

[9] This was disputed by the Fadeeffs. At her deposition, Patricia Fadeeff testified "I don't know" and "I don't recall" when asked whether she had seen "exhibit 16" (apparently the FACS report) before, and she answered "no" when asked if she recalled having any conversations or communications with the public adjuster about the findings of FACS after they inspected her home.

point to anything that constituted a pattern of egregious practices." State Farm cited this testimony: Patricia was asked: "Did you ever get a feeling from any of your interactions with people at State Farm that they wanted to harm you or hurt you intentionally?" She answered "[n]o." Leonard was asked whether anyone from State Farm ever "refuse[d] to return a call or answer a question," whether he got the "impression from anyone from State Farm that [it] wanted to harm [him] or his wife in any way," and whether he was aware of any "correspondence" that he, his wife or their public adjuster sent to State Farm that it "refused to respond to." He answered "no" to all three questions. State Farm takes the same tack on appeal, arguing that appellants "produced no actual evidence of malicious conduct" to support a punitive damages claim, and cite the answer from Patricia Fadeeff's deposition described above.

The Fadeeffs responded below that the jury should be permitted to consider whether punitive damages are appropriate. This argument has more heft in light of our conclusion that the issue of reasonableness cannot be decided on summary judgment on the facts of this case.

In the first instance, the burden is on State Farm to show that the Fadeeffs cannot prove that State Farm acted with an absence of malice, oppression or fraud. (Civ. Code, § 3294, subd. (a); § 437c, subd. (f)(1); *Basich v. Allstate Ins. Co.* (2001) 87 Cal.App.4th 1112, 1118.) Then the burden shifts to the Fadeeffs to establish evidence supporting punitive damages with the clear and convincing standard of proof. (*Basich* at pp. 1118-1119.)

State Farm has not met its burden. The fact that an individual plaintiff may not believe that the people at State Farm "wanted to harm you or hurt you intentionally" does not conclusively answer the question whether State Farm intentionally misrepresented or concealed a material fact, or

18

acted with knowing disregard of the rights of others.  (See CACI No. 3946—
Punitive Damages.)  Nor is the fact that the Fadeeffs may have relied on
their public adjuster to review materials enough to shift the burden to the
Fadeeffs to rebut a showing of no malice, oppression or fraud by State Farm.

## DISPOSITION

The judgment is reversed.  Costs on appeal are awarded to the
Fadeeffs.

                                          _____
                                          Miller, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.


A155691, *Fadeeff v. State Farm General Ins. Co.*

Filed 6/8/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEONARD FADEEFF et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br><br>STATE FARM GENERAL<br>INSURANCE COMPANY,<br><br>    Defendant and Respondent. | A155691<br><br>(Mendocino County Super. Ct.<br> No. SCTMCVG1768908) |

BY THE COURT:

The opinion in the above-entitled matter filed on May 22, 2020, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____      _____
                                                                  Kline, P.J.

1

Court:  Mendocino County Superior Court

Trial Judge:  Hon. Janine E. Nadel

Kerley Schaeffer LLP, Dylan L. Schaeffer, Christopher Carling, for Plaintiffs and Appellants

Pacific Law Partners, LLP, Sandra E. Stone, Jenny J. Chu, for Defendant and Respondent

A155691, *Fadeeff v. State Farm General Insurance Company*